FILED
UNITED STATES DISTRICT COURT
DISTRICT OF NEW MEXICO
17 NOV 15 PM 2:26 KH
CLERK-ALBUQUERQUE

# United States District Court
# For The District of New Mexico

17 CV 1140 WPJ/GBW

**Steven H. Sheets,** *pro se*
An incarcerated person
State Department of Corrections
# 60219
Lee County Correctional Facility
H-1E1201
6900 W. Miller Dr.
Hobbs, New Mexico 88244

and

**Philip D. Sheets,** *pro se*
P. O. Box 6901
Albuquerque, New Mexico 87197-6901
(505) 610-4104

Plaintiffs

v.

**State of New Mexico**
c/o Hector Balderas
Attorney General
State of New Mexico
408 Galisteo St.
Villagra Building
Santa Fe, New Mexico 87501

Lieutenant Detective
**Steve Reynolds**
Sandoval County
Sherriff's Office
P. O. Box 5219
Bernalillo, New Mexico 87004
Both Personally and as a
Representative of the State

District Attorney
**Lemuel L. Martinez**
Thirteenth Judicial District
333 Rio Rancho Dr. N.E.
Rio Rancho, New Mexico
Both Personally and as a
Representative of the State

DDA **Patrick C. McNertney**
Both Personally and as a
Representative of the State

DDA **Charlie W. Brown**
Both Personally and as a
Representative of the State

**The Honorable**
**Camille Martinez Olguin**
Thirteenth Judicial District Court
State of New Mexico
County of Sandoval
100 Avenlda Del Justica
Bernalillo, New Mexico
Both Personally and as a
Representative of the State

**Ray Twohig, P. C.**
Twohig Law Firm
Ray Twohig, Esq.
8990 Rio Grande Blvd. N. W.
Albuquerque, New Mexico 87114

**Marc Gordon,** Esq.
**Lisa Schatz-Vance,** Esq.
505 Marquette N. W., Ste. 120
Albuquerque, New Mexico 87102
Both Personally and as
Representatives of the State

Defendants

**Comes now** Steven H. Sheets, acting *pro se,* declares that I am a citizen of New Mexico and The United States of America. I am pursuing this cause of action, pursuant to 42 U. S. C. 1983, 28 U. S. C. 2255 and 28 U. S. C. 1343 (3).

Comes now Philip D. Sheets, *prose,* the father of Steven H. Sheets, declares that I am a Citizen of New Mexico and the United States of America. I PRAY FOR STANDING in this Court, as a third party, paying for the Defense of my son's case in State District Court. I also declare That all of the Defendants were citizens of New Mexico and the United States of America at the Time of the claims alleged in this complaint arose, these defendants were acting under the Color of State Law.

The Plaintiff(s) alleges Judicial Misconduct, Prosecutorial Misconduct, Coercion to obtain a Confession, Perjury, Subordination to Perjury, Conspiracy to mislead the Grand Jury, Conspiracy to over-charge and over-sentence, Ineffective Defense and over charging fees by the Defense Counsel.

## A Civil Rights Complaint

The Plaintiff(s) alleges Violations of the 4th, 5th, 6th, 8th, 13th, and 14th Amendments of the United States Constitution. In the Case, State of New Mexico v. Steven H. Sheets, No. D-1329-CR-01-0296, the State lost its right to adjudicate on March 26, 2002. On Dec. 14, 2001 a

"Petition for Extension of Time" was filed by the State; Mr. McNertney; the six months from the original date of arraignment expired on Dec. 26, 2001, Defendant Counsel concurred with the

Petition. Also on Dec. 14, 2001 the Order was "Granted and the time within which to commence trial in this case is extended to March 26, 2002," by District Court Judge Camille Martinez Olguin. Not "around" March 26, 2002. On March 19, 2002, DDA Patrick C. McNertney and my counsel made a "PETITION FOR EXTENSION OF TIME" to the Supreme Court of the State of New Mexico, until June 26, 2002. Although the Order was dated March 25, 2002, it was not stamped by the District Court Clerk Office until March 27, 2002 at 3:16 PM. Fifteen hours and sixteen minutes too late!

To have placed the Order in the record on time, would not have placed any undue hardship on the State. If Mr. Lemuel Martinez, or Patrick McNertney, had been "Honorable" men, Mr. Twohig would have received a *"NOLLE PROSEQUE"* within days.

In fact though, from the start of my case most of the parties representing the State, acted in less than an honorable manner. Even my own Counsel acted without honor. In an effort to do the "RIGHT THING", they all committed crimes! I should have plead guilty to MANSLAUGHTER. The Plaintiff(s) sees this as the only forum that Justice can be obtained.

**CAUSE OF ACTION**
**COUNT 1**

From a tip to the Rio Rancho Police, they picked up a Mr. Samuel Wamboldt who was in possession of the nine-millimeter Smith & Wesson handgun that was identified as the weapon used to kill Ms. Valerie Martinez. Mr. Wamboldt was transported to the Sandoval County Sheriff's Office. He gave a statement to Lt. Detective Steve Reynolds. The Detective talked Mr. Wamboldt into wearing a body wire to talk with me. This took place on the 4th or 5th of June 2001. It was Lt. Reynold's conversation with Mr. Wamboldt that led to Arrest and Search Warrants to be prepared for Josh Armijo, Mark Reagon and myself. (Lines 21 and 22, page 43 of the Grand Jury Transcript, June 14, 2001.)

On June 6, 2001, Lt. Reynolds, other Sandoval Sheriff Officers, Rio Rancho Police Officers, Albuquerque Police Officers, and Albuquerque SWAT Team arrived at my father's home at about 6:30 AM. My father was on the phone with attorney Tom Mescall with a question about his gun safe and his guns pertinent to the Search Warrant. Mr. Mescall did not wish to represent me on the murder charge, but suggested Mr. Ray Twohig. By 7:30, my father was talking to Mr. Twohig's Staff. He told them that he wished to hire Mr. Twohig. They guaranteed him that Mr. Twohig would notify the Sandoval Sheriff's Office that he had been hired, and not to question me until he was present. Josh and myself left my father's home in the same Sheriff's car about 8:00 AM. Mr. Twohig did not carry through with his guarantee! Had my father known that Mr. Twohig would not be there, he would have phoned another attorney!

## COUNT 2

On June 6, 2001 at 10:40 AM, the tape recording of my "Interview" started. In Lt. Reynolds' second sentence he states, "And as we discussed earlier…" In fact, he talked to me about 2 hours and 40 minutes. He told me that he knew that I was guilty and he was going to get a confession "one way or another." After I asked for an attorney four times, he brandished his service weapon, a Glock 40, and placed it on the table, and it stayed on the table the whole time of the interview. The other Detectives, Danny Sandoval and Mike Traxler, both had their service weapons on them. They coerced a confession, against my "Miranda Rights"! I later discussed this with Mr. Twohig.

## COUNT 3

In the Grand Jury Proceedings, DDA Pat McNertney gives less than adequate or misleading direction to the panel.

"A person may be charged with and convicted of a crime as an accessory if he procures, counsels, aids, or abets in its' commission, and although he did not directly commit the crime, and although the principal who directly committed such crime has not been prosecuted or convicted or has been convicted or is a child under the Children's Code. Basically the defendant may be found guilty of a crime even though he himself did not do the acts constituting the crime if the State proves to your satisfaction by probable cause that the – the defendant intended that the crime be committed, the crime was committed, the defendant helped, encouraged, or caused the crime to be committed." (Lines 23 to 25, page 8 and Lines 1 to 9, page 9) Grand Jury Testimony.

This language should never be used when all three targets are being accused of two Conspiracies as "Crimes". Also in the proceeding, Mr. McNertney and Lt. Reynolds used Mr.

Wamboldt's and my own statements to convince the Grand Jury to return an indictment against all three targets. Lt. Reynolds and Mr. McNertney committed Perjury and Subornation to Perjury to convince the Grand Jury.

**Lt. Reynolds:** His (mine) statement was very, very similar to Mr. Wamboldts.

The only similar part was that the Victim was a female. (Line 21 and 22, Page 48)
**Mr. McNertney:** Okay. Okay. With regard to the information you've received from Mr. Wamboldt about --- and also you --- the weapon that was --- that was placed into evidence, talking about the semiautomatic handgun, did Mr. Sheets state where that weapon was obtained?
**Lt. Reynolds:** I don't --- I don't recall if he did.
**Mr. McNertney:** Okay.
(Lines 22 to 25, page 51 and lines 1 to 3, page 52, my interview
**Reynolds:** OK, so he (Sam) gives you the gun?
**Sheets:** A huh.
**Reynolds:** What kind of gun?
**Sheets;** Ah 9 millimeter...
**Reynolds:** Ok I don't know ... was there ammunition for it?
**Sheets:** Yes.
**Reynolds:** Did he give you ammunition for it?
**Sheets:** Yes.

In my interview, I also said that Sam went with Joshua and myself. After relying heavily on the dishonesty and deception of Sam's custodial interrogation to prove his indictments against all three targets, Mr. McNertney taking the unusual step of trying to tank his own case against Mark Reagon. He use a witness, Geri Dean to provide exculpatory testimony for Mr. Reagon.

In my statement, there was **Sufficient Provocation** from Sam to reduce Second Degree Murder to Voluntary Manslaughter.

After the Grand Jury took the time for deliberations; from 4:55 PM to 4:58 PM, June 14, 2001, they found a true bill on all counts, reflected on the targets; Mark Regan, Joshua Armijo and myself.

After retaining James L. Brandenbury, Esq., and using Polygraph Evidence, Mr. McNertney

enters a *Nolle Prosequi* to Mark Regan, on Nov. 2, 2001.

On July 10, 2001, John J. Bogren, Esq., of Bogren and Ockenfels submits an Entry of Appearance, Request for Discovery and Demand for a Speedy Trial, for Joshua Armijo. Council asserts right to a speedy trial under the 6th Amendment and Art. 11 Sec. 14 N.M. Const. as interpreted in Zurla v. State, 109N.M. 640 (1990). I certainly did not have my right to a Speedy Trial! Joshua Armijo enters into a Guilty Plea with Mr. McNertney and the District Court / Judge Camille Martinez Olguin. In the terms of the plea, Josh agrees to testify against Sam Wamboldt. He also "waives their rights under the rules governing time of commencement of trial until the agreement is either accepted or rejected by the court". The plea is accepted on Sept. 18, 2001 and stamped on Sept. 19, 2001. On Sept. 21, Mr. McNertney puts out a supplemental witness list for Joshua? The plea is for a maximum of six years of imprisonment. On Oct. 11, 2001, Mr. Bogren withdraws as counsel. He had did is job with honor, Vera S. Ockenfels, Esq., enters as Josh's counsel. On May 2, 2003, Josh was released from custody on Probation.

## COUNT 4

I was arrested on, and Ray Twohig was hired on June 6, 2001. I has two Case Numbers, D-1329-CR-01-232 and D-1329-CR-01-236, I don't know why? Twohig's first entrance in the record is a "Filed Election to Excuse Judge Brown" by the Defendant; Denied, Not Filed in Accordance with Rule-5-206. No ENTRY OF APPEARANCE. On June 26, 2001, Arraignment and Plea; (not guilty to charges), Tape 01-237. Had my father been at the arraignment, he would have fired Twohig on the spot! He argued with the Judge as to his ability to conduct an arraignment; after Judge Brown made his decision, he continued to argue with the Judge. If this was a strategy, it was a terrible one. By having Judge Kenneth G. Brown excused, Judge Camille Martinez Olguin was assigned. Not only was the new Judge the same gender, the same ethnicity,Hispanic, but she shared the same surname as the DA and the victim! It might be interesting to know how many times in United States Jurisprudence the victim, the DA and the Judge share the same surname. What would the victim's family have said if the DA, Judge and the Defendant had been named Brown? Or perhaps, Kennedy? Judge Martinez Olguin should have recused herself under A.B.A. Standards for Criminal Justice, Standard G-17, "...whenever the judge believes his or her impartiality can reasonably be questioned."

## COUNT 5

The State District Court / Judge Martinez Olguin, committed a reversible error to Exclude the

evidence of the "q EEG" test and the opinion of my defense expert witnesses, Dr. Thomas Thompson and Dr. Ricardo Weinstein. But wait, no Order in the record! The record shows a "Notice of Hearing on April 14, 2003", but wait, no tape either! Mr. Twohig nor DDA Charles W. Brown, (new DDA for DA Lemuel L. Martinez), prepared an Order for the Judge to sign! Maybe the Judge did not have a **GOOD REASON** to exclude evidence, or expert witnesses!

In State v. Balerama, 2004- NMSC – 008, 135 N.M. 329, 8P. d845, a case exactly on point, the Supreme Court of New Mexico reversed the trial court on this very issue! A good reason or a personal prejudice? Had this case gone to trial, it could have been appealed on this one issue. The Balderama's case was only one year after my case. *"Actus reus non facit reum nisi mens sit rea."*

It is interesting to note that the DDA made its "Motion in Limine to Exclude Evidence of q EEG and the Opinion of Defense Experts" on April 4, 2003, and Mr. Twohig filed, his "Response to Daubert Motion" on the 14th of April in Open Court.

Mr. Twohig, on Jan 3, 2003, filed a "Motion to Withdraw as Counsel". My father dug up another Ten Thousand Dollars ($10,000.00), adding up to over Seventy Thousand Dollars ($70,000.00). I guess Mr. Twohig knew that he had "milked the cow dry", and would have to wait on his fee if the case had gone to trial! Perhaps if Mr. Twohig didn't take two years, he would have had the funds to go to trail!

Mr. Twohig failed in his duties to me under the A.B.A. Code of Professional Responsibility

Canon 7, EC 7-1, "... TO REPRESENT HIS CLIENT ZEALOUSLY...", AND EC 7-12 "Any mental or physical condition of a client that renders him incapable of making a considered judgment on his own behalf casts additional responsibilities upon his lawyer. Where an incompetent is acting through a guardian..." (should have been my father) "or other legal representative, a lawyer **MUST** look to such representative for those decisions which are normally the prerogative of the clients to make." Under Standard 4-3. 6. (a) ..."obtaining psychiatric examination of the accused...". What is the point if the Trial Judge can exclude them?! Could it be that the court ruled on this issue because Mr. Twohig did not want to go to trial? Perhaps an

*Ex parte* communication!

Judge Martinez Olguin did not follow A.B.A. Standard 6-1.1. (a) "The trial judge has the responsibility for safeguarding both the rights of the accused and the interests of the public in the administration of criminal justice." Mr. Brown failed in his duty as to A.B.A. Standard EC 7-13 "The responsibility as a public prosecutor differs from that of the usual advocate; his duty is to seek justice not merely to convict."

The "Guilty Plea" filed on April 21, 2003 should be vacated because of my "Traumatic Brian Injury".

## COUNT 6

Under the United States Constitution, Article VI " In all criminal prosecution the accused shall enjoy the right to a speedy and public trial…" Two years to the day, is not speedy! In Samuel Wamboldt's case, he signed a "WAIVER OF SPEEDY TRIAL" on Aug. 20, 2002. In my case no such waiver exists!

## COUNT 7
## CONSPIRACY: 30-28-2.

DDA Patrick C. McNertney, notes State v. Torre 126 N.M. 477, 482 (1998), THE New Mexico Supreme Court reaffirmed the hold by the U. S. Supreme Court in Williamson v. United States, in his Memorandum in Response to Defendant's Motion to Sever; Conclusion; Sheets' Statement is admissible in a joint trial against both Sheets and Wamboldt. The factors enumerate in Torres used to determine whether an accomplice's statement satisfies "the particular guarantees of trust worthiness" imposed by Federal Confrontation Clause, are inherently and necessarily a part of the statement against interest analysis under Rule 11-804 (B) (3). This is a firmly rooted exception in New Mexico. Because the State will not introduce Wamboldt's statement, it is asserted that no confrontation clause issue arises to prejudice Sheets.

If the 'trust worthiness" of Wamboldt's statement is an issue in this Courts actions, it is my hope that this Court would look elsewhere to find a "Conspiracy," if any exist.

In "co-conspirator's", Joshua Santos Armijo's deposition of March 1, 2002, by Ray Twohig;

page 45 Line 19,

Q: Let me ask you something. It seemed to me that I was provided with a copy of a plea Agreement in which you pled guilty to something?
A: Conspiracy to second degree murder, tampering with evidence, and something.
Q: Why did you plead guilty to that?
A: I was there the whole time.

(page 46, Line 1)

Q: Did you enter into any agreement at all to commit this murder?
A: No.
Q: Did you have any evidence at all that you participated in getting rid of or disposing of?
A: Of what?
Q: Any evidence, bullets, gun, anything like that?
A: No.

(page 47, Line 12)

Q: From what you are telling me, you pled guilty to three crimes you didn't commit; is that right?
A: I was there, I said. I agreed to go along. I didn't know what he was actually going to do, but my lawyer said that this is a good deal, so I took her advice.

(page 13, Line 18)

Q: So you went the trailer park. Where is that trailer park?
A: It's on Fourth Street.
Q: Where on Fourth?
A: I know it's between either Menaul – I don't know. It was between Candelaria and Menaul or Candelaria and Comanche. I don't know.
Q: Did he have a trailer there that he stayed in?
A: He has a little one. He owned it, but he wasn't living there at the time, because his father was remodeling it.
Q: So what did you do at the trailer park?
A: We went to his friend's house – I can't remember his name – but he is, like, right next to his – the guy next to his little trailer.
{This was Richard Toth's trailer. Richard now lives in my father's home.]
Q: What did you do there?
A: Visit there. We weren't there very long and that's when she came knocking on the door. ...

(page15, Line 1)

Q: Did she come back in or did he comeback in?
A: He came back in and said, "Are you ready to go?" I said, "Sure." So I went outside and that's when I seen her. She was in the truck.

**Q:** So you all three, then, ended up in the truck?
**A:** Yeah. ...

In my interview with Lt. Reynolds:

**Reynolds:** So at some point in time you know somewhere around April 21st you saw Valerie walking down the street is that correct, or you picked her up somewhere?
**Sheets:** We were at a friend's house.
**Reynolds:** Ok where did you see her at?
**Sheets:** That day?
**Reynolds:** On this date April 21st?
**Sheets:** She was leaving the trailer park.
**Reynolds:** OK and you stopped a you stopped and picked her up?
**Sheets:** Yeah, she flagged me down.
**Reynolds:** And who was with you?
**Sheets:** Josh.
**Reynolds:** Joshua, Joshua Armijo? And what vehicle were in?
**Sheets:** Ah, an '96 Dodge, I don't even know what it is.

In the Grand Jury Proceedings, (page 36, Line 1)

**Lt. Reynolds:** He (Sam Wamboldt) told me that Steven had told him that -- -- how it all started and --- --- <u>and how they (Steven and Josh) basically planned to do it.</u>
**Mr. McNertney:** Go ahead.
**Lt. Reynolds:** Mr. Wamboldt told me that Mr. Sheets had told him that himself, Sheets, Steven Sheets, and Josh Armijo were cruising down, I believe it was --- --- when they saw Valerie Martinez walking down the street, and she flagged him down. Steven had a relationship with Valerie Martinez earlier, an off-and-on relationship, and that --- ---
**Mr. McNertney:** You mean Steven Sheets?
**Lt. Reynolds:** Steven Sheets, yes.
**Mr. McNertney:** Okay.
**Lt. Reynolds:** Steven Sheets and Valerie Martinez had a relationship. Anyway, he picked her up after her flagging him down. They drove around for a while, and Steven decided at that time would be a good time to go ahead and kill her, <u>because nobody knew that she was with them and</u> because she had stole his drugs, stole his money, meaning his drugs, ...

(Steven's Statement)

**Traxler:** Did you ever accuse her of stealing dope from you?
**Sheets:** No. I was, she had told me that one of her friends, not her, one of her friends stole a bunch of crank...
**Traxler:** I guess one last question concerning Joshua Armijo's participation in this, was he more of a person that knew what was going on but didn't actually participate, did he just watch, what did he do exactly?
**Sheets:** Basically he just sat in the truck and watched, you know he never got out of the truck, but he talked to her.
**Traxler:** Did he encourage you to do this?
**Sheets:** No, he was just ok let's go but he basically he didn't say ya' you should go ahead and do it...

No Conspiracy at all! It is hard to see how any reasonable prosecutor can go from my Statement to Conspiracy.

**Reynolds:** So he (Sam) gives you his gun and what did you do with it?
**Sheets:** Stuck it in my pants and started talking about other things you know I mean nothing that had to do with that, we weren't talking about that when we were smoking a bowl of marijuana, we had smoke a bowl and as we were getting out he ask you know do you want me to go you know, whatever.
**Reynolds:** OK.
**Sheets:** So yeah so we got in the and we headed that way.
**Reynolds:** What way?
**Sheets:** Ah, Rio Rancho up Southern.
**Reynolds:** Did you know the area, was it your idea to go there or somebody else's?
**Sheets:** I didn't tell them I was going there I just, it just happen to top (pop) in my head, I had been there a couple of days before.
**Reynolds:** OK so you know where you were going right?
**Sheets:** Yeah I would hotrodding in my truck out there you know. ...

The substantive crimes and the crime of Conspiracy are different, and involve separate concepts.

Aiding and abetting and Conspiracy are distinct separate concepts. State v. Armijo, 1976-NMCA -126, 90 NM 12, 558 P. 2d 1151. Conspiracy is defined as a common design or agreement to accomplish an unlawful purpose. State v. Chavez, 1983-NMSC-037, 99 NM 609, 661 P. 2d 887. Common design is essence of Conspiracy. State v. Armijo, 1996-NMCA-126, 90 NM 12, 558 P. 2d 1151; State v. Farris, 1970-NMCA-067, 81 NM 589, 470P. 2d 561. No agreement, no contract, no meeting of the minds! Double Jeopardy?

But if there was a Conspiracy, the charge of "Conspiracy to Commit Second Degree Murder", was "etched in stone" on Sept. 19, 2001 when Joshua Armijo plead guilty to "Count II Conspiracy to Commit Second Degree Murder, a Third Degree Felony, contrary to 30-28-2 and 30-02-01, NMSA 1978, as amended." Conspiracy is not a crime of culpability, such as is murder!

In People v. Leisner, 73 NY 2d 140 TITONE, J., The crime of Conspiracy has been described as the "darling of modern prosecutor's nursery" (Harrison v. United States, 7 F. 2d 259, 263 [Hand, J.] perhaps because it exemplifies the "tendency of principle to expand itself to the limit of its logic" (Krulewitch v. United States, 336 US 440, 445 [Jackson, J., concurring, citing Cardozo, The Nature of the Judicial Process, at 51). Conspiracy is where there is a "rim of the wheel to enclose the spokes", (if the rem is the agreement and the spokes are the con-conspirators) (Kotteakos v. United States, 328 US 750, 755, supra). No matter the geometric

hape taken by a conspiracy, "the gist of the offense remains the agreement or understanding existed as to each defendant" (United States v. Burelli, 336 F. 2d 376, 384 [2d Cir] [Friendly, J.], citing Note, Developments in the Law – Criminal Conspiracy, op. cit. at 923-933; see also, United States v. Falcone, 109 F. 2d 579, affd 311 US 205.

It is an offense to the "Spirit" and the "Text" of the Conspiracy Statue of the State of New Mexico, 30-28-2., to have my plea to "Count I, Second Degree Murder, (Firearm Enhancement), a Second Degree Felony resulting in death..." and "Count II, Conspiracy to Commit Murder, a Second Degree Felony,

Both my "Co-Conspirators" plea was to Count II, Conspiracy to Commit a Felony, to wit: Second Degree Murder, a Third Degree Felony,... And because Samuel Wamboldt's sentences ran concurrently, and Joshua S. Armijo was sentenced to a total of 6 years, Suspended, they

never served one day for Conspiracy, while I am to serve 15 years. The men and women of the Legislature never intended this to happen! This is unconscionable! No primafacie case at all! Defendants Marc Gordan, Esq. and Lisa Schatz-Vance, Esq. are guilty of unprofessional conduct under Standard 4-3.9. by doing nothing.

## COUNT 8

The Crime(s) committed by Representatives of the State of New Mexico. Conspiracy to deprive me of my Constitutional Rights by ignoring the Court's Dates to commence a jury trial;

Supreme Court Order, March 26, 2002, Justice Minzner, Filed in District Court March 27, 2002 at 3:16 PM, Supreme Court Order, Jan. 27, 2003, Justice Minzner, Filed in District Court Jan. 29, 2003 at 1:42 PM.

Conspiracy to deprive me of my right to have Expert Witnesses.

Conspiracy to over-charge me in front of the Grand Jury for an Indictment.

Conspiracy with defendant Ray Twohig, Esq. to over-sentence me to more than a life sentence; for Second Degree Murder, amounting to "Double Jeopardy".

Defendant Ray Twohig, Esq. used the ignoring the Court's Deadlines to over-charge fees for more than a year. This is also against A.B.A. Model Code of Professional Responsibility EC 2-17, EC 2-32 and Standard 4-3.3. ©, "It is unprofessional conduct for a lawyer to enter into an agreement for, charge, or collect an illegal or clearly excessive fee."

Defendant Ray Twohig, Esq. took advantage of me as a clearly mentally challenged client, by using his authoritarian position to force me into a plea of guilty to over-charge and over-sentence an unjust implication of the "Law". In his e-mail of April 16, 2003, Mr. Twohig to Charles Brown; "I am prepared to attempt to resolve this case today." After two years it comes down to one day! No trail! No appeal!

Under Sir William Blackstone's formulation, "It is better that ten guilty persons escape than that one innocent suffer." Published in the 1760's. Justinian I, Law Code 535 AD, "Rather let

the crime of the guilty go unpunished than condemn the innocent." So, it would be ten times worse to fix a case to let a guilty person to go free, then to fix a case to over-charge and over-sentence a person.

## REQUEST FOR RELIEF

I, Steven H. Sheets, believe that I am entitled to the following relief:

**1)** Issue a Writ of *Habeas Corpus* upon the Warden of the LCCF, 6900 W. Millen Dr., Hobbs, New Mexico, to be served by a U.S. Marshal and have that Marshal deliver me to my father's home in Albuquerque, to be in the custody of my father, Philip D. Sheets, for the duration of this case. I believe my safety will be in danger if I remain in State Custody.

**2)** Order Ray Twohig, Esq. to refund all fees collected by him, to my father, plus interest.

**3)** To award me compensation for my loss of liberty for over sixteen (16) years, the amount Of Ten Million Dollars, ($10,000,000.00).

Respectfully submitted,

Steven H. Sheets

Steven H. Sheets

Attachments next page

1) Certified copy of the Case Docket Case No. D-1329-CR-2001-00196.

2) Certified copy of Partition for Extension of Time (4 pages) Filed Dec. 14, 2001.

3) Certified copy of Order Granting Extension of Time, Filed Dec. 14, 2001, till March 26, 2001.

4) Certified copy of SC Petition for Extension of Time (2 pages) Filed March 19, 2002.

5) Certified copy of SC Order, Filed March 27, 2002 3:16 PM till June 26, 2002.

6) Certified copy of SC Order, Filed June 26, 2002 (No Petition for Extension of Time) till Sept. 26, 2002.

7) Certified copy of SC Order, Filed Aug. 23, 2002 (No Petition for Extension of Time) till Jan. 27, 2003.

8) Certified copy of SC Order, Filed Jan. 29, 2003 (No Petition for Extension of Time) till April 21, 2003.

9) Certified copy Motion to Withdraw as Counsel Filed Jan 3, 2003 (2 pages).

10) Certified copy of Notice of Hearing for Jan. 31, 2003, 10:00 AM (2 pages) filed Jan. 23, 2003
(No withdraw of Motion, No Order on Motion)

11) Evaluation of Thomas C. Thompson, Ph. D., ABPN, ACPN Dated 11/30/2002 (7 pages).

12) E-mail from Ray Twohig to Charles Brown Dated April 16, 2003.

**IN THE UNITED STATES DISTRICT COURT**

**FOR THE DISTRICT OF NEW MEXICO**

**VERIFICATION**

I, Steven H. Sheets, being first duly sworn, on oath, states that I have read the within and foregoing, and under penalty of perjury, I am the plaintiff in the above action, that I have read the above complaint and that the information contained therein is true and correct. 28 U. S. C. Sec. 1746. 18 U. S. C. Sec 1621.

Executed at Lea County Correctional Facility

On Oct. 31, 2017

Steven H Sheets

Steven H. Sheets

**IN THE UNITED STATES DISTRICT COURT**

**FOR THE DISTRICT OF NEW MEXICO**

**VERIFICATION**

I, Philip D. Sheets, being first duly sworn, on oath, states that I have read the within and foregoing, and under penalty of perjury, I am the plaintiff in the above action, that I have read the above complaint and that the information contained therein is true and correct. 28 U. S. C. Sec. 1746. 18 U. S. C. Sec 1621.

Executed at Albuquerque, New Mexico, 87197-6901

On ~~Oct.~~ Nov. 15, 2017

Philip D. Sheets

Philip D. Sheets

13TH JUDICIAL DISTRICT COURT IN SANDOVAL COUNTY

# CASE DOCKET

## CASE NO. D-1329-CR-2001-00196

| | | | |
|---|---|---|---|
| **State of New Mexico** | § | Location: | **Bernalillo** |
| **v.** | § | Judicial Officer: | **Rael, Pedro G.** |
| **STEVEN H SHEETS** | § | Filed on: | **06/15/2001** |
| | § | Case Number History: | |

### CASE INFORMATION

| Offense | Statute | Deg | Date |
|---|---|---|---|
| 1. MURDER - OPEN CHARGE | 30-2-1 | U | 04/21/2001 |
| 2. CONSPIRACY TO COMMIT A CRIME | 30-28-2 | F1 | 04/21/2001 |
| 3. TAMPERING WITH EVIDENCE | 30-22-5 | F4 | 04/21/2001 |
| 4. CONSPIRACY TO COMMIT A CRIME | 30-28-2 | F4 | 04/21/2001 |
| 5. RECEIVING/DISPOSING OF STOLEN PROP | 30-16-11 | F4 | 04/21/2001 |
| 6. POSSESSION FIREARM/DESTRUCTIVE DEVICE BY A FELON | 30-7-16 | F4 | 04/21/2001 |

Case Type: **Felony Crimes Against Persons**

Case Status: **09/30/2009 Reopened**

**Statistical Closures**

01/15/2004 Judgment / Sentence / Commitment

### DATE — CASE ASSIGNMENT

**Current Case Assignment**

| | |
|---|---|
| Case Number | D-1329-CR-2001-00196 |
| Court | Bernalillo |
| Date Assigned | 10/11/2016 |
| Judicial Officer | Rael, Pedro G. |

### PARTY INFORMATION

| | | Lead Attorneys |
|---|---|---|
| **Defendant** | **SHEETS, STEVEN H** | **Gordon, Marc A.**<br>*Public Defender*<br>505-841-5108(W) |
| **Plaintiff** | **State of New Mexico** | **NM District Attorney 13th - Bernalillo**<br>505-896-3952(W) |

### DATE — EVENTS & ORDERS OF THE COURT — INDEX

06/15/2001 OPN: GRAND JURY INDICTMENT (Judicial Officer: Brown, Kenneth G. )
*FILED GRAND JURY INDICTMENT COUNT I - MURDER COUNT II - CONSPIRACY (TO COMMIT MURDER) COUNT III - TAMPERING WITH EVIDENCE COUNT IV - COMPIRACY (TO COMMIT TAMPERING WITH EVIDENCE) COUNT V - RECEIVING STOLEN PROPERTY (RETAIN) ALTERNATIVE TO COUNT V - RECEIVING STOLEN PROPERTY (DISPOSE) COUNT VI - POSSESSION OF A FIREARM OR DESTRICTIVE DEVICE BY A FELON*

06/15/2001 STATEMENT OF JOINDER (Judicial Officer: Brown, Kenneth G. )
*FILED STATEMENT OF JOINDER WITH D-1329-CR-01-97 AND D-1329-CR-01-98*

06/15/2001 REQUEST FOR HEARING/ SETTING (Judicial Officer: Brown, Kenneth G. )
*FILED REQUEST FOR HEARING-ARRAIGNMENT*

06/18/2001 NTC: HEARING (CRIMINAL)
*FILED NOTICE OF HEARING-ARRAIGNMENT 06-25-01 9:30*

# CASE DOCKET

## CASE NO. D-1329-CR-2001-00196

06/25/2001 **ARRAIGNMENT** (9:00 AM) (Judicial Officer: Brown, Kenneth G.)
Events: 06/18/2001 NTC: HEARING (CRIMINAL)
*Calendar Posting on 06-18-2001 9:30 A.M., ARRAIGNMENT*

06/25/2001 JDG: JUDGE EXCUSAL/PEREMPTORY CHALLENGE (Judicial Officer: Brown, Kenneth G. )
*FILED ELECTION TO EXCUSE JUDGE BROWN BY THE DEFENDANT *DENIED NOT FILED IN ACCORDANCE WITH RULE 5-106.*

06/26/2001 ARRAIGNMENT & PLEA (Judicial Officer: Brown, Kenneth G. )
*FILED ARRAIGNMENT, DF ENTERS PLEA OF NOT GUILTY TO CHARGES*

06/26/2001 ORD: CONDITIONS OF RELEASE (Judicial Officer: Brown, Kenneth G. )
*FILED ORDER SETTING CONDITIONS OF RELEASE, SETTING BOND AT $500,000.00 CASH*

06/26/2001 TAPE & LOG RECEIPT
*FILED CLERK'S RECEIPT ON ARR-NOT HERE/FIND OUT WHY CLIENT & ATTY NOT HERE/J: ARRAIGNMENT STILL NEEDS TO BE HEARD BY KGB/ ADA TO RESET ARR TAPES 01-232 & 01-236*

06/26/2001 JDG: JUDGE EXCUSAL/PEREMPTORY CHALLENGE (Judicial Officer: Brown, Kenneth G. )
*FILED THIRD ELECTION TO EXCUSE JUDGE BROWN BY DEFENDANT.*

06/27/2001 TAPE & LOG RECEIPT
*FILED CLERK'S RECEIPT ON CONT HEARING/MOTION-KGB JURISDICTN TO HEAR ARRAIGNMENT/DENIED ARR/NG BOND REDUCTION $500,000 CASH TAPE 01-237*

06/27/2001 NTC: NOTICE
*FILED NOTICE OF FILING OF EXCUSAL - REPLACEMENT JUDGE WILL BE ASSIGNED JULY 10, 2001 IF NO STIPULATION FILED.*

07/11/2001 JDG: JUDGE ASSIGN ADMINISTRATIVE
*FILED NOTICE OF JUDGE ASSIGNMENT - CASE REASSIGNED TO THE HONORABLE CAMILLE M OLGUIN DUE TO THE EXCUSAL OF THE HONORABLE KENNETH G BROWN.*

07/11/2001 CORRESPONDENCE (Judicial Officer: Olguin, Camille Martinez )
*FILED CORRESPONDENCE FROM RAY TWOHIG TO JUDGE BROWN REGARD- ING ELECTION TO EXCUSE AND THE SCHEDULING OF ARRAIGNMENT*

09/04/2001 WITNESS LIST
*FILED WITNESS LIST*

09/04/2001 CERTIFICATE OF DISCLOSURE OF INFORMATION
*FILED CERTIFICATE OF DISCLOSURE*

09/04/2001 NTC: TRAILING DOCKET
*FILED TRAILING DOCKET NOTICE*

09/20/2001 SUPPLEMENTAL INFORMATION
*FILED SUPPLEMENTAL WITNESS LIST*

| | |
|---|---|
| 11/27/2001 | WITNESS LIST<br>*FILED STATES SUPPLEMENTAL WITNESS LIST* |
| 11/27/2001 | REQUEST FOR HEARING/ SETTING (Judicial Officer: Olguin, Camille Martinez )<br>*FILED REQUEST FOR HEARING-PRE TRIAL* |
| 12/04/2001 | NTC: REQUEST AND NOTICE OF HEARING<br>*FILED REQUEST AND NOTICE OF HEARING-PRE TRIAL 12-14-01 9:00* |
| 12/14/2001 | MED: PETITION FOR EXTENSION<br>*FILED PETITION FOR EXTENSION OF TIME* |
| 12/14/2001 | ORD: DISTRICT COURT EXTENSION GRANTED (Judicial Officer: Olguin, Camille Martinez )<br>*FILED ORDER GRANTING EXTENSION OF TIME TO 03-26-02* |
| 12/14/2001 | ORD: ORDER (Judicial Officer: Olguin, Camille Martinez )<br>*FILED ORDER GRANTING STATES AND DFS MOTIONS AND DEMANDS* |
| 01/14/2002 | CERTIFICATE<br>*FILED CERTIFICATE OF COMPLETION OF SWORN STATEMENT OF STEVE REYNOLDS.* |
| 01/14/2002 | CERTIFICATE<br>*FILED CERTIFICATE OF COMPLETION OF SWORN STATEMENT OF MICHAEL A TRAXLER* |
| 01/29/2002 | WITNESS LIST (Judicial Officer: Olguin, Camille Martinez )<br>Filed By: Plaintiff State of New Mexico<br>*Amended* |
| 01/30/2002 | WITNESS LIST (Judicial Officer: Olguin, Camille Martinez )<br>Filed By: Plaintiff State of New Mexico<br>*Amended* |
| 02/01/2002 | WITNESS LIST (Judicial Officer: Olguin, Camille Martinez )<br>Filed By: Plaintiff State of New Mexico<br>*Amended* |
| 02/20/2002 | MTN: MOTION (Judicial Officer: Olguin, Camille Martinez )<br>*FILED MOTION AND MEMORANDUM TO SEVER DEFENDANTS BY DEF.* |
| 02/20/2002 | REQUEST FOR HEARING/ SETTING (Judicial Officer: Olguin, Camille Martinez )<br>*FILED REQUEST FOR HEARING-MOTION TO SEVER DEFENDANTS.* |
| 03/08/2002 | MEMORANDUM<br>*FILED MEMORANDUM IN RESPONSE TO DEFENDANT'S MOTION TO SEVER* |
| 03/08/2002 | NTC: HEARING (CRIMINAL)<br>*FILED NOTICE OF HEARING-MOTION TO SEVER DEFENDANTS 03-15-02 10:00* |
| 03/19/2002 | MED: PETITION FOR EXTENSION |

| | |
|---|---|
| | *FILED PETITION FOR EXTENSION OF TIME* |
| 03/25/2002 | CERTIFICATE OF DEPOSITION<br>*FILED CERTIFICATE OF COMPLETION OF DEPOSITION OF SHIRLEY GARCIA* |
| 03/25/2002 | CERTIFICATE OF DEPOSITION<br>*FILED CERTIFICATE OF COMPLETION OF DEPOSITION OF HEATHER WHITTEN* |
| 03/27/2002 | ORD: SUPREME COURT EXTENSION GRANTED<br>*FILED CERTIFIED COPY OF ORDER FROM NM SUPREME COURT EXTENDING TIME TO 06-26-02* |
| 04/15/2002 | VERIFIED STATEMENT/CERTIFICATE (Judicial Officer: Olguin, Camille Martinez )<br>*FILED CERTIFICATE OF STATEMENT OF DAVID YOUNG (DF)* |
| 04/15/2002 | VERIFIED STATEMENT/CERTIFICATE (Judicial Officer: Olguin, Camille Martinez )<br>*FILED CERTIFICATE OF STATEMENT OF CARL MICHAEL OFFNER (DF)* |
| 04/23/2002 | MTN: MOTION (Judicial Officer: Olguin, Camille Martinez )<br>*FILED MOTION FOR SEVERANCE (DF)* |
| 04/23/2002 | REQUEST FOR HEARING/ SETTING (Judicial Officer: Olguin, Camille Martinez )<br>*FILED REQUEST FOR HEARING-MOTION FOR SEVERANCE (DF)* |
| 05/13/2002 | NTC: HEARING (CRIMINAL)<br>*FILED NOTICE OF HEARING-MOTIONS AND PRE-TRIAL 05-31-02 9:00* |
| 05/31/2002 | MTN: FOR CONTINUANCE (Judicial Officer: Olguin, Camille Martinez )<br>*FILED MOTION FOR CONTINUANCE (PL)* |
| 05/31/2002 | ORD: OF CONTINUANCE (Judicial Officer: Olguin, Camille Martinez )<br>*FILED ORDER CONTINUING PRETRIAL HEARING* |
| 06/18/2002 | CERTIFICATE OF DEPOSITION<br>Party: Defendant SHEETS, STEVEN H<br>*FILED CERTIFICATE OF COMPLETION OF DEPOSITION OF MARK REGAN (DF)* |
| 06/26/2002 | ORD: DISTRICT COURT EXTENSION GRANTED<br>*FILED ORDER GRANTING EXTENSION OF TIME TO 09-26-02* |
| 07/31/2002 | NTC: OF JURY TRIAL (Judicial Officer: Olguin, Camille Martinez )<br>*FILED NOTICE OF JURY TRIAL 08-26-02 10:00* |
| 08/16/2002 | SEALED DOCUMENT (Judicial Officer: Olguin, Camille Martinez )<br>*FILED MOTION AND ORDER FOR TRANSPORT ** SEALED *** |
| 08/23/2002 | ORD: DISTRICT COURT EXTENSION GRANTED |
| 08/23/2002 | RESPONSE (Judicial Officer: Olguin, Camille Martinez )<br>*FILED RESPONSE TO DEFENDANT'S "SEALED" EX PARTE ORDER TO TRANSPORT AND MOTION FOR DISCLOSURE OF "EXPERT" WITNESSES* |

# CASE DOCKET

## CASE NO. D-1329-CR-2001-00196

08/28/2002 SEALED DOCUMENT (Judicial Officer: Olguin, Camille Martinez )
*FILED MOTION AND ORDER TO VACATE TRANSPORT ** SEALED ***

10/21/2002 TAPE & LOG RECEIPT
*FILED CLERK'S RECEIPT ON MOTION TO SEVER TAPE 1*

12/11/2002 WITNESS LIST
Filed By: Defendant SHEETS, STEVEN H
*FILED DEFENDANT'S AMENDED WITNESS LIST (DF)*

12/11/2002 NTC: NOTICE
Party: Defendant SHEETS, STEVEN H
*FILED NOTICE OF INCAPACITY TO FORM SPECIFIC INTENT (DF)*

12/26/2002 NTC: HEARING (CRIMINAL)
*FILED NOTICE OF HEARING-PRETRIAL 01-10-03 10:00*

12/26/2002 NTC: OF JURY TRIAL (Judicial Officer: Olguin, Camille Martinez )
*FILED NOTICE OF HEARING-JURY TRIAL 01-30-03 9:30*

01/03/2003 MTN: TO WITHDRAW (Judicial Officer: Olguin, Camille Martinez )
Filed By: Defendant SHEETS, STEVEN H
*FILED MOTION TO WITHDRAW AS COUNSEL (RAY TWOHIG FOR DF)*

01/03/2003 REQUEST FOR HEARING/ SETTING (Judicial Officer: Olguin, Camille Martinez )
Filed By: Defendant SHEETS, STEVEN H
*FILED REQUEST FOR HEARING-MOTION TO WITHDRAW AS COUNSEL (DF)*

01/10/2003 RESPONSE (Judicial Officer: Olguin, Camille Martinez )
*FILED STATE'S RESPONSE TO DEFENDANT'S NOTICE INCAPACITY TO FORM SPECIFIC INTENT*

01/23/2003 NTC: HEARING (CRIMINAL)
*FILED NOTICE OF HEARING-PRE TRIAL CONFERENCE 01-24-03 1:00*

01/23/2003 NTC: HEARING (CRIMINAL)
*FILED NOTICE OF HEARING-MOTION TO WITHDRAW AS COUNSEL 01-31-03 10:00*

01/24/2003 ORD: ORDER (Judicial Officer: Olguin, Camille Martinez )
*FILED ORDER REGARDING MOTION FOR SEVERANCE, EACH DF IS GRANTED A SEPARATE TRIAL*

01/24/2003 ORD: TO TRANSPORT (Judicial Officer: Olguin, Camille Martinez )
*FILED TRANSPORT ORDER DIRECTING SHERIFF TO TRANSPORT DF FROM SCDC TO VALENCIA COUNTY MAGISTRATE COURT ON 01-24-03 1:00*

01/27/2003 NTC: HEARING (CRIMINAL)
*FILED NOTICE OF HEARING-PRE TRIAL MOTIONS/CONFERENCE 04-04-03 10:00*

01/27/2003 NTC: HEARING (CRIMINAL)
*FILED NOTICE OF HEARING-JURY TRIAL 04-21-03 10:00*

01/29/2003 Metro Court Appeal Order Time Extension

| | |
|---|---|
| | *FILED CERTIFIED COPY OF ORDER FROM NM SUPREME COURT GRANTING AN EXTENSION OF TIME TO 04-21-03* |
| 02/14/2003 | NTC: HEARING (CRIMINAL)<br>*FILED AMENDED NOTICE OF HEARING-PRETRIAL CONFERENCE/MOTIONS 03-14-03 3:00* |
| 02/27/2003 | ORD: TO TRANSPORT (Judicial Officer: Olguin, Camille Martinez )<br>*FILED STIPULATED ORDER FOR TRANSPORT FOR FORENSIC INTERVIEW AND EVALUATION, FROM SCDC TO THE OFFICE OF TONY J KREUCH ON 03-03-03 9:00* |
| 03/13/2003 | MTN: FOR CONTINUANCE (Judicial Officer: Olguin, Camille Martinez )<br>*FILED MOTION FOR CONTINUANCE <DF>* |
| 03/13/2003 | ORD: OF CONTINUANCE (Judicial Officer: Olguin, Camille Martinez )<br>*FILED ORDER CONTINUING PRETRIAL HEARING: IT IS HEREBY ORDERED THAT THE PRETRIAL HEARING PRESENTLY SCHEDULED FOR 1-10-03 @ 10:00AM BE CONTINUED UNTIL A DATE TO BE DETERMIED BY THE COURT* |
| 03/13/2003 | MTN: FOR CONTINUANCE (Judicial Officer: Olguin, Camille Martinez )<br>*FILED <FAXED> MOTION FOR CONTINUANCE <DF>* |
| 03/13/2003 | ORD: OF CONTINUANCE (Judicial Officer: Olguin, Camille Martinez )<br>*FILED ORDER CONTINUING PRETRIAL HEARING: IT IS HEREBY ORDERED THAT THE PRETRIAL HEARING PRESENTLY SCHEDULED FOR 3-14-03 @ 3:00PM BE CONTINUED / UNTIL A DATE TO BE DETERMINED BY THE COURT.* |
| 03/17/2003 | ORD: ORDER (Judicial Officer: Olguin, Camille Martinez )<br>*FILED ORDER REGARDING MOTION FOR SEVERANCE GRANTING EACH DF A SEPARATE TRIAL* |
| 04/04/2003 | MTN: IN LIMINE (Judicial Officer: Olguin, Camille Martinez )<br>*FILED MOTION IN LIMINE TO EXCLUDE EVIDENCE OF QEEG AND THE OPINION OF DEFENSE EXPERTS* |
| 04/04/2003 | REQUEST FOR HEARING/ SETTING (Judicial Officer: Olguin, Camille Martinez )<br>*FILED REQUEST FOR HEARING-MOTION IN LIMINE TO EXCLUDE EVIDENCE* |
| 04/10/2003 | NTC: HEARING (CRIMINAL)<br>*FILED NOTICE OF HEARING-MOTION IN LIMINE TO EXCLUDE EVIDENCE 04-14-03 10:00* |
| 04/10/2003 | ORD: TO TRANSPORT (Judicial Officer: Olguin, Camille Martinez )<br>*FILED TRANSPORT ORDER DIRECTING SHERIFF TO TRANSPORT DF FROM SCDC TO CIBOLA COUNTY COURTHOUSE 04-14-03 9:30* |
| 04/11/2003 | MTN: MOTION (Judicial Officer: Olguin, Camille Martinez )<br>Filed By: Defendant SHEETS, STEVEN H<br>*FILED MOTION TO PERMIT TELEPHONIC EXPERT TESTIMONY (DF)* |
| 04/14/2003 | ORD: TO TRANSPORT (Judicial Officer: Olguin, Camille Martinez )<br>*FILED TRANSPORT ORDER DIRECTING SHERIFF TO TRANSPORT DF FROM SCDC TO CIBOLA COUNTY COURTHOUSE 04-14-03 9:30* |
| 04/21/2003 | |

# CASE DOCKET

## CASE NO. D-1329-CR-2001-00196

| | |
|---|---|
| | REPEAT OFFENDER PLEA/DISP AGMT<br>*FILED REPEAT OFFENDER PLEA AND DISPOSITION AGREEMENT: THE DF AGREES TO PLEAD GUILTY TO COUNT I, SECOND DECREE MURDER (FIREARM ENHANCEMENT), COUNT II, CONSPIRACY TO COMMIT MURDER, COUNT III, TAMPERING WITH EVIDENCE, COUNI IV, POSSESSION OF A FIREARM BY A FELON / BALANCE* |
| 04/21/2003 | **Plea** (Judicial Officer: Olguin, Camille Martinez)<br>*G*<br>1. MURDER - OPEN CHARGE<br>Guilty<br>STN: : |
| 04/21/2003 | **Plea** (Judicial Officer: Olguin, Camille Martinez)<br>*G*<br>2. CONSPIRACY TO COMMIT A CRIME<br>Guilty<br>STN: : |
| 04/21/2003 | **Plea** (Judicial Officer: Olguin, Camille Martinez)<br>*G*<br>3. TAMPERING WITH EVIDENCE<br>Guilty<br>STN: : |
| 04/21/2003 | **Plea** (Judicial Officer: Olguin, Camille Martinez)<br>*G*<br>4. CONSPIRACY TO COMMIT A CRIME<br>Guilty<br>STN: : |
| 04/29/2003 | RESPONSE (Judicial Officer: Olguin, Camille Martinez )<br>Party: Defendant SHEETS, STEVEN H<br>*FILED RESPONSE TO DAUBERT MOTION <ATTACHMENT> <FILED IN OPEN COURT 04-14-03> (DF)* |
| 05/05/2003 | TAPE & LOG RECEIPT<br>*FILED CLERK'S RECEIPT ON MOTION IN LIMINE TAPE 03-14* |
| 07/25/2003 | REQUEST FOR HEARING/ SETTING (Judicial Officer: Olguin, Camille Martinez )<br>*FILED REQUEST FOR HEARING-SENTENCING* |
| 07/28/2003 | NTC: HEARING (CRIMINAL)<br>*FILED NOTICE OF HEARING-SENTENCING 08-22-03 2:00* |
| 08/21/2003 | MTN: TO VACATE (Judicial Officer: Olguin, Camille Martinez )<br>Filed By: Defendant SHEETS, STEVEN H<br>*FILED MOTION TO VACATE SENTENCING HEARING <DF>* |
| 08/22/2003 | TAPE & LOG RECEIPT<br>*FILED CLERK'S RECEIPT ON PLEA TAPE 03-16* |
| 09/05/2003 | NTC: HEARING (CRIMINAL) |

# CASE DOCKET

## CASE NO. D-1329-CR-2001-00196

| | |
|---|---|
| | *FILED NOTICE OF HEARING-SENTENCING 09-19-03 1:30* |
| 09/16/2003 | MTN: FOR CONTINUANCE (Judicial Officer: Olguin, Camille Martinez )<br>Filed By: Defendant SHEETS, STEVEN H<br>*FILED MOTION FOR CONTINUANCE <DF)* |
| 09/16/2003 | ORD: OF CONTINUANCE (Judicial Officer: Olguin, Camille Martinez )<br>*FILED ORDER CONTINUING SENTENCING HEARING - VACATING 9-19-03* |
| 10/02/2003 | NTC: HEARING (CRIMINAL)<br>*FILED NOTICE OF HEARING-SENTENCING 11-13-03 1:30 BACKUP* |
| 11/13/2003 | **Disposition** (Judicial Officer: Olguin, Camille Martinez)<br>1. MURDER - OPEN CHARGE<br>CRB: GUILTY/NO CONTEST PLEA<br>STN: : |
| 11/13/2003 | **Disposition** (Judicial Officer: Olguin, Camille Martinez)<br>2. CONSPIRACY TO COMMIT A CRIME<br>CRB: GUILTY/NO CONTEST PLEA<br>STN: : |
| 11/13/2003 | **Disposition** (Judicial Officer: Olguin, Camille Martinez)<br>3. TAMPERING WITH EVIDENCE<br>CRB: GUILTY/NO CONTEST PLEA<br>STN: : |
| 11/13/2003 | **Disposition** (Judicial Officer: Olguin, Camille Martinez)<br>4. CONSPIRACY TO COMMIT A CRIME<br>CRB: GUILTY/NO CONTEST PLEA<br>STN: : |
| 11/13/2003 | **Disposition** (Judicial Officer: Olguin, Camille Martinez)<br>5. RECEIVING/DISPOSING OF STOLEN PROP<br>CRB: DISMISSED BY PROSECUTOR<br>STN: : |
| 11/13/2003 | **Disposition** (Judicial Officer: Olguin, Camille Martinez)<br>6. POSSESSION FIREARM/DESTRUCTIVE DEVICE BY A FELON<br>CRB: DISMISSED BY PROSECUTOR<br>STN: : |
| 11/13/2003 | **Sentence** (Judicial Officer: Olguin, Camille Martinez)<br>1. MURDER - OPEN CHARGE<br>Sentenced<br>Confinement<br>Location: Department Of Corrections, Term: 35 Years<br>Total Term: 32 Years, 7 Months, 17 Days<br>Suspended Term: 866 Days<br>Pre-Sentence Credit:<br>Consecutive: D-1329-CR-2001-00196 |
| 11/13/2003 | **Sentence** (Judicial Officer: Olguin, Camille Martinez) |

# CASE DOCKET

## CASE NO. D-1329-CR-2001-00196

| | |
|---|---|
| | 2. CONSPIRACY TO COMMIT A CRIME<br>Sentenced<br>Probation<br>Term: 5 Years, 0 Month, 0 Day<br>Level of Supervision: 5 Years 0 Month 0 Day Adult Probation & Parole<br>Total Term: |
| 11/13/2003 | **Sentence** (Judicial Officer: Olguin, Camille Martinez)<br>3. TAMPERING WITH EVIDENCE<br>Sentenced |
| 11/13/2003 | **Sentence** (Judicial Officer: Olguin, Camille Martinez)<br>4. CONSPIRACY TO COMMIT A CRIME<br>Sentenced |
| 01/15/2004 | ASM: JAIL PRISON<br>*Sentenced on 01-15-2004 Count 1-1 Sentenced: 35 years 0 months 0 days Credited: 0 years 0 months 866 days* |
| 01/15/2004 | ASM: PROBATION<br>*Sentence on 01-15-2004 Count 2-1 Probation Agency: ADULT PROBATION & PAROLE DEPT. Sentenced: 5 years 0 months 0 days* |
| 01/15/2004 | CLS: JUDGMENT/ SENTENCE/ COMMITMENT (Judicial Officer: Olguin, Camille Martinez )<br>*FILED JUDGMENT PARTIALLY SUSPENDED SENTENCE AND COMMITMENT IT IS ORDERED THAT TEH DF BE COMMMITTED TO THE NM DEPT OF CORRECTIONS FOR THE TERM OF 38 YEARS - IT IS ORDERED THAT 3 YEARS OF SENTENCE IS SUSPENDED AND DF IS HEREBY PLACED ON 5 YEARS PROBATION- DF SHALL SERVE A PAROLE PERIOD OF 2 YEARS* |
| 02/10/2004 | CERTIFICATE OF CONVICTION<br>*FILED CERTIFICATE OF CONVICTION* |
| 02/13/2004 | MTN: TO RECONSIDER/ REVIEW (Judicial Officer: Olguin, Camille Martinez )<br>Filed By: Defendant SHEETS, STEVEN H<br>*FILED MOTION TO RECONSIDER SENTENCE <DF>* |
| 02/13/2004 | REQUEST FOR HEARING/ SETTING (Judicial Officer: Olguin, Camille Martinez )<br>Filed By: Defendant SHEETS, STEVEN H<br>*FILED REQUEST FOR HEARING - MOTION TO RECONSIDER <DF>* |
| 06/21/2004 | EXHIBIT RECEIPT (Judicial Officer: Olguin, Camille Martinez )<br>*FILED RECEIPT FOR EXHIBITS* |
| 06/26/2007 | MTN: MOTION (Judicial Officer: Olguin, Camille Martinez )<br>Filed By: Defendant SHEETS, STEVEN H<br>*FILED MOTION FOR RECORDS* |
| 06/26/2007 | MTN: MOTION (Judicial Officer: Olguin, Camille Martinez )<br>Filed By: Defendant SHEETS, STEVEN H<br>*FILED MOTION FOR FREE PROCESS* |
| 06/26/2007 | REQUEST FOR HEARING/ SETTING (Judicial Officer: Olguin, Camille Martinez )<br>Filed By: Defendant SHEETS, STEVEN H<br>*FILED REQUEST FOR HEARING ON MOTION FOR FREE PROCESS AND MOTION FOR RECORDS* |

# CASE DOCKET

## CASE NO. D-1329-CR-2001-00196

07/17/2007
CERTIFICATE/ PROOF OF MAILING
*FILED CERTIFICATE OF MAILING COMPLETE COPY OF COURT FILE AND AUDIO PROCEEDINGS MAILED TO THE DEFENDANT BY CERTIFIED MAIL ON 7-17-07*

09/30/2009
RPN: HABEAS CORPUS PETITION (Judicial Officer: Olguin, Camille Martinez )
Party: Defendant SHEETS, STEVEN H
*FILED PETITION FOR WRIT OF HABEAS CORPUS*

09/30/2009
JDG: NO ACTION EXCUSAL
*FILED DEFENDANT'S PEREMPTORY CHALLENGE TO DISTRICT JUDGE (HONORABLE CAMILLE MARTINEZ) NO ACTION TAKEN ON THIS EXCUSAL*

09/30/2009
ORD: FOR FREE PROCESS (Judicial Officer: Olguin, Camille Martinez )
*FILED ORDER ON APPLICATION FOR FREE PROCESS ORDERED: THE FILING FEE IS WAIVED*

10/02/2009
ORD: OF APPOINTMENT (Judicial Officer: Olguin, Camille Martinez )
*FILED ORDER OF APPOINTMENT PD DPT APPTD TO REPRESENT PETITIONER ON INEFFECTIVE ASSTNCE OF COUNSEL ISSUES; FEE WAIVED; PETITIONER'S HABEAS CORPUS IS DENIED WITH REGARD TO DOUBLE JEOPARDY ISSUES; PEREMPTORY CHALLENGE TO DISTRICT JUDGE - COURT DENIES THE CHALLENGE; PETITIONER MAY RENEW ISSUE IN AMENDED PETITION OR RELATED PLEADING IF COUNSEL DEEMS APPROPRIATE*

10/02/2009
CERTIFICATE/ PROOF OF MAILING
*FILED CERTIFICATE OF MAILING ORDER OF APPTMT TO POST-CONVICITON/HABEAS DIVISION OF THE PUBLIC DEFENDER AND TO PETITIONER S SHEETS*

12/15/2009
ENTRY OF APPEARANCE (Judicial Officer: Olguin, Camille Martinez )
Filed By: Defendant SHEETS, STEVEN H
*FILED ENTRY OF APPEARANCE MARC GORDONG ON BEHALF OF DEF (PETITIONER IN HABEAS CORPUS) (FAX FILED)*

04/27/2011
CORRESPONDENCE
On Behalf Of: Defendant SHEETS, STEVEN H
*regarding case status*

08/09/2012
ORD: ORDER
*to Prepare Response to Habeas Corpus Petition*

08/17/2012
ENTRY OF APPEARANCE
Filed By: Attorney Boynton, Bruce, III

08/28/2012
ENTRY OF APPEARANCE
*Bruce Boynton obo James Janecka*

12/07/2012
OBJECTION/OPPOSITION
Filed By: Defendant SHEETS, STEVEN H
*to Respondent's Failure to File Timely Answer*

12/21/2012
RESPONSE
*of James Janecka to petition for writ of Habeas Corpus*

13TH JUDICIAL DISTRICT COURT IN SANDOVAL COUNTY

# CASE DOCKET

## CASE NO. D-1329-CR-2001-00196

| | |
|---|---|
| 03/05/2014 | MTN: MOTION<br>Filed By: Defendant SHEETS, STEVEN H<br>*to Order Petitioner's Attorney to Give Petitioner Copies of Everything Filed by State and Petitioner's Attorney on CR#2001-196* |
| 09/01/2016 | WITHDRAWAL/ ENTRY/ SUBSTITUTION OF COUNSEL<br>Filed By: Interested Party JANECKA, JAMES<br>*Notice of Substitution of Counsel (Interested Party)* |
| 10/07/2016 | REQUEST FOR HEARING/ SETTING<br>Filed By: Interested Party JANECKA, JAMES<br>*Request for Hearing on Habeaus Corpus* |

I, Christal R. Bradford, Clerk of the District Court of Sandoval County, Bernalillo, New Mexico, hereby certify that the foregoing is a true, correct and full copy of the instrument herewith set out as appears of record in my office.

Dated this 20th day of October 2017

By _______________
Deputy

THIRTEENTH JUDICIAL DISTRICT COURT
STATE OF NEW MEXICO
COUNTY OF SANDOVAL

FILED IN MY OFFICE
DISTRICT COURT CLERK
01 DEC 14 PM 1:51
THERESA VALENCIA
BY ________ DEPUTY
SANDOVAL COUNTY

STATE OF NEW MEXICO,
Plaintiff,

vs.

**STEVEN H. SHEETS,**

Defendant.

**No. D-1329-CR-01-0196**
DA# SV-01-0303

## PETITION FOR EXTENSION OF TIME

**COMES NOW** the State of New Mexico by and through Patrick McNertney, Deputy District Attorney for the Thirteenth Judicial District, and, pursuant to Rule 5-604 of the New Mexico Rules of Criminal Procedure, petitions this Court for an extension of time within which to commence trial, and as good cause therefore states:

1. A Grand Jury Indictment was filed on June 15, 2001 for Murder (Open); Conspiracy To Commit Murder; Tampering With Evidence; Conspiracy To Commit Tampering With Evidence, Receiving Stolen Property, Or In the Alternative, Receiving Stolen Property; Possession of A Firearm Or Destructive Device by a Felon.
2. Respondent was arrested on June 6, 2001.
3. Respondent was arraigned on June 26, 2001, at which time he plead not guilty.
4. The case was assigned to the Honorable Kenneth G. Brown.
5. An Excusal of the Honorable Kenneth G. Brown was filed on June 8, 2001.
6. On June 19, 2001 the Honorable Camile M. Olguin was assigned to the case.
7. Six months from the original date of arraignment expires on December 26, 2001.
8. The State and the defense attorney needs additional time to set up pre-trial interviews.

CB

9. Defendant and his Counsel concur with this Petition.

10. Respondent is represented by Ray Twohig, 8998 Rio Grande Blvd. NW., Albuquerque, New Mexico, 87114, telephone number is 505-243-5551.

**WHEREFORE,** Petitioner moves the District Court of the State of New Mexico to extend the date for commencement of trial for 90 days beyond December 26, 2001 or Until, March 26, 2002.

Respectfully submitted,

LEMUEL L. MARTINEZ
District Attorney

By: Patrick C. McNertney
Patrick McNertney
Deputy District Attorney
100 Avenida de Justica
Bernalillo, New Mexico 87004
Telephone:(505) 867-2386

I hereby certify that I mailed a copy of the foregoing Petition to opposing counsel of record, on this 14th day of December

________________, 2000.

Pat McNertney

STATE OF NEW MEXICO )
)ss.
COUNTY OF SANDOVAL )

## VERIFICATION

Patrick McNertney, Assistant District Attorney, being first duly sworn, on oath, states that he has read the within and foregoing Petition and knows its contents and that the matters and facts therein are true according to his best knowledge, information and belief.

Patrick C. McNertney

Patrick McNertney
Deputy District Attorney

SUBSCRIBED AND SWORN TO before me this 14 day of December, 2001.

My commission expires: 6-20-03

IN THE DISTRICT COURT OF THE STATE OF NEW MEXICO

**MEMORANDUM TO THE COURTS**

No. ____________

District Court Cause No. and County: Sandoval No. D-1329-CR 01-0196

District Court Judge: Camile M. Olguin

Date of Arrest : ____________________________

Arraignment: June 26, 2001

Date Rule Runs: December 26, 2001

Extension requested to: March 26, 2002

Reason for Request for Extension: Defense attorney has not had the opportunity to requested pre-trial interviews before December 26, 2001.

Any prior Extensions NO

Opposing Counsel Stipulates: X Objects: ___ Other: ______

ACTION:

Grant ____________________

Deny ____________________ Date ________________________

Other ____________________ Justice ____________________

I, Christal R. Bradford, Clerk of the District Court of Sandoval County, Bernalillo, New Mexico, hereby certify that the foregoing is a true, correct and full copy of the instrument herewith set out as appears of record in my office.

Dated this 20 day of October 20 17

By [signature]
Deputy

FILED IN MY OFFICE
DISTRICT COURT CLERK
01 DEC 14 PM 1:51
THERESA VALENCIA
BY ____________ DEPUTY
SANDOVAL COUNTY

THIRTEENTH JUDICIAL DISTRICT COURT
COUNTY OF SANDOVAL
STATE OF NEW MEXICO

STATE OF NEW MEXICO,
Plaintiff,

vs.

**STEVEN SHEETS,**
Defendant,

No. **D-1329-CR-01-0196**
DA# SV-01-0303

**ORDER GRANTING EXTENSION OF TIME**

**THIS MATTER** having coming for consideration by the Honorable Camile M. Olguin, District Court Judge of the Thirteenth District on the State's first motion for Extension of Time, pursuant to Rule 5-604 of the District Court Rules, and the Court having considered said Petition and now being sufficiently advised finds that good cause exists to grant said Petition;

**NOW, THEREFORE, IT IS SO ORDERED** that the State's first Motion for Extension of Time is hereby GRANTED and the time within which to commence trial in this case is extended to March 26, 2002. CMO

[signature]
**DISTRICT COURT JUDGE**
THE HONORABLE CAMILLE M. OLGUIN
THIRTEENTH JUDICIAL DISTRICT



CB

I, Christal R. Bradford, Clerk of the District Court of Sandoval County, Bernalillo, New Mexico, hereby certify that the foregoing is a true, correct and full copy of the instrument herewith set out as appears of record in my office.

Dated this 20 day of October 20 17

By ______________________
Deputy

**IN THE SUPREME COURT OF THE STATE OF NEW MEXICO**

STATE OF NEW MEXICO,
Plaintiff,

vs.

**Steven Sheets,**
DOB: 12-11-80
SSN: 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
Defendant.

**No. D-1329-CR-01-0196**
DA # SV-01-0303

FILED IN MY OFFICE
DISTRICT COURT CLERK
02 MAR 19 AM 9:36
THERESA VALENCIA
SANDOVAL COUNTY
BY ___ DEPUTY

**PETITION FOR EXTENSION OF TIME**

**COMES NOW** the State of New Mexico by and through, PATRICK C. MCNERTNEY, Deputy District Attorney for the Thirteenth Judicial District, and, pursuant to Rule 5-604 of the New Mexico Rules of Criminal Procedure, petitions this Court for an extension of time within which to commence trial, and as good cause therefore states:

1. A Grand Jury Indictment charging Respondent with Murder (Open Count); Conspiracy to Commit Murder; Tampering with Evidence; Conspiracy to Commit Tampering with Evidence; Receiving Stolen Property (Retain); Alternative: Receive Stolen Property (Dispose); Possession of a Firearm or Destructive Device by a Felon, was filed on June 15, 2001.

2. Respondent was arraigned on June 26, 2001, at which time he plead not guilty.

3. The State subsequently filed a petition with the District Court for an extension of time. The court granted the request and extended the trial deadline to March 26, 2002. (Exhibit A Order granting extension).

5. The District court set the matter for trial before Honorable Camille M. Olguin on April 22, 2002 Trial Docket, however a definite trial date has not been set.

6. Counsel for Defendant-Petitioner stipulates to an extension of rule date until June 26, 2002 .

CM

**WHEREFORE,** Petitioner moves the Supreme Court of the State of New Mexico to extend the date for commencement of trial for 90 days beyond March 26, 2002, or until June 26, 2002.

Respectfully submitted,

LEMUEL L. MARTINEZ
District Attorney

By: Patrick C. McNertney
PATRICK C. MCNERTNEY
Deputy District Attorney
100 Avienda De Justicia
Bernalillo, New Mexico 87004
Telephone:(505) 867-2386

I hereby certify that I mailed a copy of the foregoing Petition to opposing counsel of record, Ray Twohig, 8998 Rio Grande Blvd. NW Albuquerque, New Mexico 87114 this 18th day of March, 2002.

Monica Gurule

I, Christal R. Bradford, Clerk of the District Court of Sandoval County, Bernalillo, New Mexico, hereby certify that the foregoing is a true, correct and full copy of the instrument herewith set out as appears of record in my office.

Dated this 20 day of October 20 17

By [signature]
Deputy

IN THE SUPREME COURT OF THE STATE OF NEW MEXICO
March 25, 2002

NO. 8000-16575

STATE OF NEW MEXICO,

Petitioner,

vs.

STEVEN SHEETS,

Respondent.

FILED IN MY OFFICE
DISTRICT COURT CLERK
02 MAR 27 PM 3:16
THERESA VALENCIA
BY DEPUTY
SANDOVAL COUNTY

Sandoval
CR-01-196

**ORDER**

This matter coming on for consideration by the Court upon Petition of the State of New Mexico by and through the District Court for the Thirteenth Judicial District, for an extension of time pursuant to Rule 5-604 of the District Court Rules, and the Court having considered said Petition and being sufficiently advised, Justice Minzner sitting;

NOW, THEREFORE, IT IS ORDERED that an extension is GRANTED to and including June 26, 2002, pursuant to the District Court Rules.

ATTEST: A TRUE COPY

Esther Vigil

Clerk of the Supreme Court
of the State of New Mexico

I, Christal R. Bradford, Clerk of the District Court of Sandoval County, Bernalillo, New Mexico, hereby certify that the foregoing is a true, correct and full copy of the instrument herewith set out as appears of record in my office.

Dated this 20 day of October 20 17

By [signature]
Deputy

FILED IN MY OFFICE
DISTRICT COURT CLERK
02 JUN 26 PM 1:26
THERESA VALENCIA
BY__________DEPUTY
SANDOVAL COUNTY

IN THE SUPREME COURT OF THE STATE OF NEW MEXICO
June 25, 2002

NO. 8000-16575

STATE OF NEW MEXICO,

Petitioner,

vs.

STEVEN SHEETS,

Respondent.

Sandoval
CR-01-196

**ORDER**

This matter coming on for consideration by the Court upon Petition of the State of New Mexico by and through the District Court for the Thirteenth Judicial District, for an extension of time pursuant to Rule 5-604 of the District Court Rules, and the Court having considered said Petition and being sufficiently advised, Justice Minzner sitting;

NOW, THEREFORE, IT IS ORDERED that an extension is GRANTED to and including September 26, 2002, pursuant to the District Court Rules.

ATTEST: A TRUE COPY

Clerk of the Supreme Court
of the State of New Mexico

I, Christal R. Bradford, Clerk of the District Court of Sandoval County, Bernalillo, New Mexico, hereby certify that the foregoing is a true, correct and full copy of the instrument herewith set out as appears of record in my office.

Dated this 20 day of October 17

By ______________________
Deputy

IN THE SUPREME COURT OF THE STATE OF NEW MEXICO
August 22, 2002

NO. 8000-16575

STEVEN SHEETS,

Petitioner,

vs.

STATE OF NEW MEXICO,

Respondent.

FILED IN MY OFFICE
DISTRICT COURT CLERK
02 AUG 23 PM 3:50
THERESA VALENCIA
BY ____ DEPUTY
SANDOVAL COUNTY

Sandoval
CR-01-196

**ORDER**

This matter coming on for consideration by the Court upon Petition of the State of New Mexico by and through the District Court for the Thirteenth Judicial District, for an extension of time pursuant to Rule 5-604 of the District Court Rules, and the Court having considered said Petition and being sufficiently advised, Justice Maes sitting;

NOW, THEREFORE, IT IS ORDERED that an extension is GRANTED to and including January 27, 2003, pursuant to the District Court Rules.

ATTEST: A TRUE COPY

Esther Vigil

Clerk of the Supreme Court
of the State of New Mexico

I, Christal R. Bradford, Clerk of the District Court of Sandoval County, Bernalillo, New Mexico, hereby certify that the foregoing is a true, correct and full copy of the instrument herewith set out as appears of record in my office.

Dated this 20 day of October 20 17

By [signature]
Deputy

IN THE SUPREME COURT OF THE STATE OF NEW MEXICO
January 28, 2003

FILED IN MY OFFICE
DISTRICT COURT CLERK
2003 JAN 29 PM 1:42
THERESA VALENCIA
BY TL DEPUTY
SANDOVAL COUNTY

NO. 8000-16575

STEVEN SHEETS,

Petitioner,

vs.

STATE OF NEW MEXICO,

Respondent.

Sandoval
CR-01-196

**ORDER**

This matter coming on for consideration by the Court upon Petition of the State of New Mexico by and through the District Court for the Thirteenth Judicial District, for an extension of time pursuant to Rule 5-604 of the District Court Rules, and the Court having considered said Petition and being sufficiently advised, Justice Minzner sitting;

NOW, THEREFORE, IT IS ORDERED that an extension is GRANTED to and including April 21, 2003, pursuant to the District Court Rules.

ATTEST: A TRUE COPY
Esther Vigil
Clerk of the Supreme Court
of the State of New Mexico

I, Christal R. Bradford, Clerk of the District Court of Sandoval County, Bernalillo, New Mexico, hereby certify that the foregoing is a true, correct and full copy of the instrument herewith set out as appears of record in my office.

Dated this 20 day of October 20 17

By ______________________
Deputy

THIRTEENTH JUDICIAL DISTRICT COURT
COUNTY OF SANDOVAL
STATE OF NEW MEXICO

FILED IN MY OFFICE
DISTRICT COURT CLERK
03 JAN -3 AM 8:21
THERESA VALENCIA
BY ______ DEPUTY
SANDOVAL COUNTY

No. D1329-CR-02001-196

STATE OF NEW MEXICO,

Plaintiff,

vs.

STEVEN SHEETS,

Defendant.

**MOTION TO WITHDRAW AS COUNSEL**

Ray Twohig, as counsel for Defendant Sheets, hereby moves for leave to withdraw as counsel for Defendant on the ground that Defendant's parents, who have committed adequate financial resources to defend this case are unable to honor that commitment at this time, and it is therefore necessary for counsel to withdraw in order for Defendant to have available the resources necessary for effective assistance of counsel. See Subin vs. Ulmer, 2201 NMCA 105, 13 NM 350, 36 P.3d 441.

Counsel cannot remain in the case because, as is now inherent, the only way that the Defendant will have access to the funds necessary to assure the protection of his constitutional right under Ake vs. Oklahoma, 470 US 68, 77, 83, 105 S.Ct 1087, 84 L.Ed2d 53 (1985), in light of the Subin vs. Ulmer decision, is for privately retained counsel to withdraw from representation. Although undersigned counsel is Defendant's counsel of choice, and Defendant will be denied his counsel of choice by virtue of the granting of this motion, it is the only way under New Mexico law in which the Defendant can be assured of the resources necessary to effectively defend his case. Those

resources are substantial. They involve the retention of the two (2) witnesses whom undersigned counsel has already retained, Dr. Thompson and Dr. Weinstein, and payment of those experts for their services and for their continued activity in connection with this case.

Since the Defendant is indigent, having no income or assets of his own at this time, he is eligible for appointment of counsel under the Public Defender Act and will thereby be able to vindicate his constitutional right to expert services despite the violation of his right to counsel.

Respectfully submitted;

RAY TWOHIG, P.C.

RAY TWOHIG
Attorney for Defendant Sheets
8998 Rio Grande Blvd., N.W.
Albuquerque, New Mexico 87114
505/898-0400
FAX: 505/898-0004

I certify that a true and correct copy of the foregoing Motion was faxed to Assistant District Attorney David Waymire on December 29, 2002.

Ray Twohig

I, Christal R. Bradford, Clerk of the District Court of Sandoval County, Bernalillo, New Mexico, hereby certify that the foregoing is a true, correct and full copy of the instrument herewith set out as appears of record in my office.

Dated this 20 day of October 20 17

By [signature]
Deputy

FILED IN MY OFFICE
DISTRICT COURT CLERK
03 JAN 23 PM 3:45
THERESA VALENCIA
BY TL DEPUTY
SANDOVAL COUNTY

THIRTEENTH JUDICIAL DISTRICT COURT
COUNTY OF SANDOVAL
STATE OF NEW MEXICO

No. D1329-CR-02001-196

STATE OF NEW MEXICO,

Plaintiff,

vs.

STEVEN SHEETS,

Defendant.

**NOTICE OF HEARING**

A hearing in this case is set before the Honorable Camile M. Olguin as follows:

Date of Hearing: January 31, 2003

Time of Hearing: 10:00am

Length of Hearing: Thirty (30) minutes

Place of Hearing: Sandoval County Judicial Complex, 100 Avenida de Justicia

Matter(s) to be Heard: Motion to Withdraw as Counsel

THE HONORABLE CAMILE M. OLGUIN

By [signature]

Notice mailed or delivered on date of filing to parties listed on attached sheet.

ALL PARTIES ENTITLED TO NOTICE

Ray Twohig
Attorney for Defendant Sheets
8998 Rio Grande Blvd., N.W.
Albuquerque, New Mexico 87114
(505) 898-0400

Robert Cooper
Attorney for Defendant Wambolt
1011 Lomas Blvd., N.W.
Albuquerque NM 87102
(505) 842-8494

Patrick C McNertney
13th Judicial District Attorney's Office
Post Office Box 669
Bernalillo, New Mexico 87004
(505) 867-2386

I, Christal R. Bradford, Clerk of the District Court of Sandoval County, Bernalillo, New Mexico, hereby certify that the foregoing is a true, correct and full copy of the instrument herewith set out as appears of record in my office.

Dated this 20 day of October 20 17

By Paulene J. Galloway

Deputy

# Thompson, Sak, and Associates

Thomas C. Thompson, Ph.D., ABPN, ACPN
M. J. Sak, M.A., LPCC

1036 South Main Street
Las Cruces, New Mexico.88005

**Thomas C. Thompson, Ph. D., ABPN, ACPN**
**Clinical and Neuropsychology**
**Diplomate American Board of Professional Neuropsychology**
Phone 505-526-1936
Fax 505-524-7715
E-mail tctmjs@zianet.com

**Date:** 11/30/02

**Neuropsychological Consultation/Evaluation**

**Name:** Steven Sheets
**DOB:** 12/11/80
**Age:** 21 years
**Gender:** Male

**Referral source:** Rey Twohigg, Attorney at Law-Albuquerque, New Mexico.
**Reason for referral:** Consultation with regard to mental state and neuropsychological functioning
**Place of Consultation:** Sandoval County Detention Center (SCDC).

**Date(s) of consultation:** 08/16/02, 09/20/02, 10/18/02, and 10/19/02.

**Material Reviewed:**

1. Albuquerque Public Schools-Special Education Records, Statement of Joshua Santos Armijo-03/01/02.
2. Tape Recorded Interview of Samuel Wamboldt - 05/11/01.

**Procedures:**

1. Interview and developmental history with parents - 08/16/02.
2. Multiple interviews with Steven Sheets.
3. Soper Neuropsychology Status Examination (SNSE).
4. Auditory Consonant Trigrams (ACT).
5. Trail Making Test (TMT).
6. Boston Naming Test (BNT).
7. Controlled Oral Word Association Test (FAS).
8. North American Adult Reading Test (NAART).

9. Wechsler Adult Intelligence Scale-Revised (WAIS-R).
10. Wide Range Achievement Test-3 (WRAT-3).
11. Stroop Color and Word Test (Stroop).
12. California Verbal Learning Test-II (CVLT-II).
13. Rey Complex Figure Test with immediate, delayed, and recognition trials (RCFT).
14. Lateral Dominance Examination.
15. Luria Frontal Lobe Motor Tasks.
16. Tactual Performance Test (TPT).
17. Halstead Category Test (CT).
18. Personality Assessment Inventory (PAI).

**Current circumstances:** Steven Sheets is a 21-year-old, right-handed male who was currently incarcerated at the Sandoval County Detention Center. At the time of valuation he was charged with Count I-Murder, Count II-Conspiracy to Commit Murder, Count III-Tampering with Evidence, Count IV-Conspiracy to Commit Tampering with Evidence, Count V-Receiving Stolen Property, Alternative to Count V-Receiving Stolen Property (Dispose), Count VI-Possession of a Firearm or Destructive Device by a Felon.

**Relevant history:** Steven Sheets is a 21-year-old, right-handed male who was seen for numerous consultations at the SCDC where he was interviewed, a complete battery of neuropsychological tests were administered, and Quantitative Electroencephalographic Evaluation (qEEG) was administered by Ricardo Weinstein, Ph.D., from San Diego, California. Steven was cooperative throughout all consultations and testing and sustained a full effort.

Steven's parents Mrs. and Mr. Sheets were interviewed on August 16, 2002, at the office of his attorney Mr. Rey Twohigg in Albuquerque, New Mexico. The parents reported an early history of attentional problems, hyperactivity, and learning disabilities. In addition, they reported a history that was positive for problems in the adequate development of language use, putting words together, and being able to organize his thoughts. According to Mrs. and Mr. Sheets, Steven was hospitalized at 22 months of age as a result of acute renal failure. His kidneys had completely shutdown and Steven was reported to be in coma for several days. He was also reported to have had seizures at the time of the hospitalization and was apparently placed on Valium during hospitalization in order to control seizure activity. According to his parents, they had perceived Steven's development up to the time of his kidney failure as being relatively normal.

His parents reported that Steven's behavior and personality change were dramatic from the pre- to post-illness period of time. Prior to renal failure, he was described as a very bright child who appeared to be meeting developmental goals in a time-appropriate context. According to his mother, he was able to sit up, crawl, and walk within the first year of life. Language development appeared to be adequate, i.e., he developed initial words and the ability to put two or more words together during the first and second year of life. His parents could not recall difficulties prior to the onset of the renal failure.

Following the renal failure, his parents reported that he developed an initial partial hearing loss and he appeared to develop visual problems during the third year of life . Steven began to show a pattern of being listless and having less energy and was reported to show these symptoms over a period of approximately two years. According to the parents, his growth levels were retarded for approximately two years post renal failure and it was their belief that physically he did not begin to

approximate his pre-illness health and physical growth until he was approximately 4+years of age. Beginning at approximately five years of age, he developed severe migraine headaches and would require to be taken to the emergency room and treated with an injection of an unknown medication. The migraines lasted for approximately six years.

Following the renal failure, he was also reported to have become quite susceptible to any type of infection that was available and was seen by physicians frequently during that time. It was the belief that Steven had been treated frequently by antibiotics during this period of time. His parents reported that Steven also had numerous streptococcal infections.

Upon entering school, Steven was described as a very slow learner and later high school records which were reviewed indicated quite significant impairments in academic and adaptive skills. He was reported to have had a significant number of problems associated with attention, concentration, impulse control, and difficulties in terms of irritability. His parents noted that Steven had difficulties in terms of problem solving and that he appeared to have significant problems in terms of being able to "think ahead." Their descriptions of his difficulties sounded as if Steven had significant problems in terms of conceptualizing tasks. According to Steven's father, you had to be extremely patient with him when attempting to get him to learn something new. His father reported that you had to repeatedly show Steven how to do tasks in a very concrete manner. His father described him as slow to conceptualize what the problem was and he was, in general, slow to catch on "doing things."

His parents described Steven's change in functioning from the pre-illness to the post-illness time as "night and day." Particularly significant for them in terms of their memory was how much slower he had become in terms of his cognitive functioning and how much different his personality, i.e., social emotional and adaptive functioning was. They described him as having the kind of personality in childhood (post illness) that if "someone said let's go do something," Steven would go and do it without any forethought, the behavioral pattern which did not change. They described him as being easily led and as a result, perceived him as getting into trouble because of this. They believed that he was quite gullible and extremely capable of being influenced by individuals that he was with. According to his father, Steven always did better if other people provided the structure. This was particularly true in terms of dealing with problems that he had to confront. His father noted that Steven was an extremely poor problem solver and organizer of his behavior when left to his own resources than if somebody else structured him.

In terms of relationships, Steven apparently had difficulties. The parents indicated that by the time he was in the 6th grade, he had begun to develop an awareness that he was different from others. According to them, he began to realize that he did not learn the way others did and this significantly impacted him. In Boy Scouts, he was able to make a few friends; however, it was his father's perceptions, supported by his mother's, that Steven felt he could not do things as well as others which, in fact, was true. According to his parents, he began to feel worse about himself, began to worry excessively, and had significant difficulties in being able to feel as if he fit in to the other groups of kids who are perceived as developing normally. Developmentally, Steven's parents report no history of violent behavior, no history of fire setting, cruelty to animals, and there was no history of early onset behavioral difficulties. Despite the changes in personality and impulsivity, this was not manifested at the early age by conduct disordered or oppositional behavior.

It is difficult for his parents to understand or conceptualize the reason that Steven would have been

involved in such a crime. They find it hard to come up with a plausible explanation. His parents noted that Steven witnessed one of his friends being shot and killed when he was a senior in high school. This apparently happened when Steven and his friends were in a building when someone fired through the window striking and killing his friend in front of him. According to his parents, Steven tried to resuscitate his friend but to no avail. They described him after that period of time as being extremely affected by it. The victim of the crime was known to Mrs. & Mr. Sheets. She had previously resided in one of their trailers and in fact had been expelled by the father. In addition, Mr. Sheets reported that Steven had witnessed him in a very heated altercation with the victim. Mr. Sheets describes himself has been extremely angry with her, feeling that she had no business in the trailer Park, and feeling as if she were trying to influence Steven. His father stated that Steven approached him at one time and told him "he was incapable of handling her" and asked his father if he would help him. According to Mrs. Sheets, the victim had approached her on several occasions and had stated that everything they had would eventually be hers someday.

A review of the special education records from the Albuquerque Public Schools indicate that Steven was an individual who had significant impairment. He was noted to have significant language-based difficulties and was identified as an individual who needed concrete instruction, was easily distracted, and needed significant amounts of reenforcement for learning. Assessments of his educational level using the Wide Range Achievement Test in 1997 indicated that Steven had Reading, Spelling, and Arithmetic skills at the 2nd-grade level, all of which would have been below the 1st percentile. These scores are almost identical to the current administration of the Wide Range Achievement Test-3 that was administered on September 20, 2002, indicating that Steven had achieved little progress over the years. The records noted further that Steven had significant difficulties in general language skills, problems in being able to express a complete thought in writing, and had significant problems in terms of oral vocabulary. It was noted in an evaluation that "he needs specially designed instruction in all academic areas with one-on-one support from a special education teacher." In addition, he was noted to have significant problems in terms of social adaptation and was felt to need involvement with school social work programs, although there were no indications that therapy in this latter area of concern occurred.

**Current findings:** Throughout the process of interviews and testing, Steven was cooperative. He appeared quite immature and his functioning at the current time appeared to be consistent with the descriptions of school personnel in terms of both academic as well as problems in social adaptation noted in 1997. During interview and testing, Steven was slow and had difficulty in conceptualizing information which was presented to him. Questions frequently had to be repeated and/or reformulated. He was noted to have difficulties on motor tasks, organization, and problems in terms of the conceptualization of new information. Verbal skills/language skills were quite impaired across the testing. In addition Stevens adaptive skills in social emotional level appeared quite low and he further he evidenced what could best be described as significant deficits with commonsense.

On the SNSE, a neuropsychological screening task, Steven was noted to have problems in terms of verbal reasoning, in terms of simple awareness of similarities and differences, as well as difficulties in terms of abstract reasoning. His ability to register information was adequate for brief material which was presented to him, although he had difficulties in terms of delayed recall of this information. Task which required mental control were also done in an impoverished fashion. Steven had difficulties on tasks of phonetic analyses/word attack skills consistent with dyslexia and was noted to have difficulties on tasks requiring him to organize and draw more complex geometric

figures. Working memory was considered to be significantly impaired as demonstrated by his performance on the ACT, a working memory task with varying degrees of complexity/difficulty. He was noted to be very slow, had difficulty organizing and keeping track of multiple aspects of the task and had difficulty maintaining cognitive focus on the task. His performance across all three levels of difficulty were impaired with increasing difficulty as the task became more complex. Similar findings were evident on two visual attentional/tracking task, the TMT Part A and Part B. His performance on both these tasks were within the impaired range.

On test of language functioning, he was noted to show significant impairment. His performance on the BNT, a confrontational naming task, was within the severally impaired range, indicating a pattern that was consistent with a history of extremely poor language functioning. Similar findings were noted on the verbal fluency task and on the Verbal IQ estimate from the NAART, a standardized adult word recognition task which correlates moderately well with verbal intellectual capacity.

The WAIS-R was used for the assessment of intellectual functioning. He achieved a Verbal IQ of 80, 9th percentile, a Performance IQ of 82, 12th percentile, and a Full Scale IQ of 79, 8th percentile, placing him within the low-average to borderline range. As would be expected based upon earlier history, those scores having to do with language information such as the Information and Vocabulary subtest, were the lowest within his overall scatter of scores. In addition, his Comprehension subtest which measures common knowledge/commonsense, was the lowest in the scatter and was consistent with the reported deficits in adaptive capacity noted by the schools. In addition, this was consistent with his presentation in interview of an individual who was extremely concrete and limited in terms of social functioning.

Further indication of his level of language functioning and verbal intelligence was reflected by his performance on the WRAT-III, an achievement test. As noted earlier, he has previously been given a administration of the Wide Range Achievement Test in 1997, and there was very little difference in the scores indicating that Steven has not been able to profit by attempts at remediation despite what the school identified as adequate effort and cooperation in academic therapies. His performance on the WRAT-III on September 20, 2002, resulted in a Reading standard score of 58, 0.6th percentile, a Spelling score of 60, 0.8th percentile, and a Arithmetic score of 72, 3rd percentile.

The performance on the Reading and Spelling tests are felt to be the best estimate of his overall level of intellectual functioning which places him within the range of mild mental retardation in this area and in the borderline to low-average range in terms of nonverbal functioning. These findings were further supported on the Word Score subtest from the Stroop were his score was at the 2nd percentile. His performance on this latter task was a clear indication that reading has never become a well-automated/over learned skill. Further indications of deficits in terms of language-based learning skills were evident from the CVLT-II. His overall performance was within the moderately-impaired range characterized by significant difficulties in his ability to attendant to material and significant difficulties in his overall rate of learning. Even on this task which allows for the over learning of material by repeated presentations, his performance was significantly impaired.

On nonverbal task his performance was better. On the RCFT, a complex visual constructional task, his performance was within the low-average range, although he had difficulty holding material over time. Performance on motor tasks with regard to motor speed and motor coordination were within normal limits as was his strength of grip bilaterally and he was noted to be a consistently

right-handed. On more complex motor tasks, he had difficulty on task of response inhibition/impulsivity on the Luria Frontal Lobe Motor Test.

On several nonverbal tasks, the Tactual Performance Test, his performance was within the average range, although again difficulties were noted in terms of aspects of memory from this test ranging in mild-to-very impaired, depending upon the complexity of the memory tasks. His performance on the Category Test, a task of nonverbal problem solving, was within the mildly impaired range which, compared to his language based tasks, was consistent with an individual for whom nonverbal skills were a much greater strength.

The PAI was administered in an attempt to develop personality assessment; however his performance was characterized by inconsistencies and responding which were felt to be related to difficulties in the reading, problems in staying on task, and becoming confused with the items.

Ricardo Weinstein, Ph.D., a neuropsychologist from California conducted a qEEG, a neurophysiological measure of brain functioning. This involved the recording of a brain wave electrical activity under resting states and states of activation including reading, mental arithmetic, etc. The results from this evaluation were interpreted by Dr. Weinstein as being consistent with an individual who showed a patter of brain impairment greater in the frontal systems and one which was consistent with the patterns of behavior that were observed during neuropsychological evaluation.

**Conclusions:** The results of the current neuropsychological evaluation including the interviews, testing, interviews with parents, and results of the qEEG were considered to be consistent with an individual who shows a pattern of functioning ranging from the mild mentally retarded range in terms of language function to the low-average range in terms of nonverbal functioning. The results of the evaluation currently are consistent with previous information gathered by the schools in terms of special education assessment and treatment.

Based on the interview with Steven's parents, it is believed that the origin of his cognitive and behavioral deficits are the result of neuropsychological dysfunction associated with the early kidney failure. The early renal failure appears to have resulted in a long-term pattern of deficits most likely associated with uremic encephalopathy at the time of his hospitalization at 22 months when he was in coma. As a result of the kidney failure at 22 months, it is also likely that there was elevated blood pressure/hypertension and it is probable that the effect of this on early brain development also contributes to the current clinical picture. These neuropsychological deficits underlie the chronic immaturity, deficits in self-observation and deficits associated with self-evaluation of reasoning and judgement which were evident during the interview and assessment.

It is believed that the neuropsychological deficits and the subsequent cognitive and personality changes secondary to these underlie Steven's behavior at the time of the shooting. Deficits in his quality of thinking about the victim, and deficits in his ability to evaluate his thinking, judgements, and conclusion were paramount at the time. In addition, a review of the statement of Joshua Santos Armijo would also tend to suggest that Steven was also strongly influenced by the behavior of Mr. Wamboldt. This would also be consistent with the parents' early observations of how poorly Steven did when he was not structured, how easily he was influenced by others, and how impaired his judgement appeared to be in evaluating himself in these situations. Further his behavior does not appear to be related to a long-standing Antisocial Personality Disorder. The material provided

in history was not consistent with early onset Oppositional Defiant Disorder or Conduct Disorder.

In summary, the behavior on the part of Steven Sheets appears to be related to a long history of cognitive deficits and deficits in social adaptation which were noted in school and continue to be present. These deficits are believed to be reasonably associated with the results of early kidney failure at 22 months and the resulting deficits in cognitive/adaptive development.

Respectfully,

Thomas C. Thompson, Ph.D., ABPN, ACPN
Licensed Psychologist
Board Certified Neuropsychology

**Ray Twohig**

**From:** Ray Twohig [rambaud@flash.net]
**Sent:** Wednesday, April 16, 2003 6:29 AM
**To:** 'Charles Brown'
**Subject:** Re: Sheets/Steven - Criminal Defense

Charlie,

I have your offer in this case. I have reviewed it with Mr. Sheets, and plan to meet with his family this morning. I would like to talk to you about this later this morning. First, a couple of observations.

While I don't mean to minimize the loss to the family of his victim, and don't seek to compare these losses, I seek to have the criminal justice system, especially you and the judge, give consideration to the impact of this decision on Mr. Sheets and his family. The consequences of his actions to himself or his victim or her family were not things he considered at all when he pulled the trigger, or at any time before that. He just didn't have the capacity to think that through, nor consider alternatives which would have been obvious to anyone functioning normally. This crime was senseless. There was no good reason for it at all. In the end, Sheets would have walked away from it, except for Wambolt's encouragement and pressure. After more than 33 years of law practice, I remain hopeful that the people who work in the system as lawyers and judges, in this case you and Judge Olguin, will grasp the scope and impact of the decisions you make.

Mr. Wambolt has a deal with a ten year cap. If Mr. Sheets, now 22 years old, accepted your offer, he would be 50 before being eligible for parole. He would earn no good time. He could be rejected for parole in the year 2031, and again for the rest of his life. We have no clue what a parole board will look or think like at that time, twenty eight years from now.

I would like to see something worked out in the case which takes him into account, and which provides a fixed time range for him to serve. He is a very limited young man, as you could tell from the report and testimony from Dr. Thompson, and as your psychologist must have observed. With some opportunity in prison to learn and improve himself, if such a thing is possible in the New Mexico prison system over the next couple of decades, he could come out as an adult with the capacity to live a law abiding life. His limited functioning due to his brain damage has not made him evil, just unable to analyze very well, and highly susceptible to influence by others.

I suggest resolution by a plea with a cap of 20 years--or even an agreed 20 year sentence. That could be done with a plea to second degree as well as conspiracy to commit murder. Note, that under this plea, Section 33-2-34 limits good time to a maximum of 4 days per month. Eligibility is not included on the county jail time, which has been two years, and would be another month or more before sentencing. Nor does it include time in RDC. So, that means about 17.5 years would be subject to good time of a maximum of 48 days per year. Thus, he could only receive 840days of good time. This means the least time he would serve would total 6460 days. Deducting the two years he has served, he would be incarcerated for at least another 5730 days, or 15.7 years. This means the earliest he could be released is early in the year 2019 at the age of 37 or 38 (I have not figured his age exactly based on his date of birth).

This is a very long prison sentence. The world will change a lot in those years. There may be many new developments and insights concerning the kind of brain damage Mr. Sheets has suffered. It may be generally recognized as barbaric by the end of his sentence to incarcerate someone with these difficulties in a prison system such as we have. However, it is the way we deal with the mentally deficient today in New Mexico, and generally throughout the United States. While I do not seek to debate

the future course of our criminal justice system, it is hard to believe it will get worse than it is.

I am prepared to attempt to resolve this case today. However, I have a hearing this afternoon in Albuquerque which could take two or three hours. Tomorrow I leave early for Alamagordo on one case, followed by a day in El Paso on another. Please consider what I have suggested in this email. I will call you later this morning.

Ray Twohig